Case number 253146 Roderico Perez-Perez v. Pamela Bondi. Argument not to exceed 15 minutes per side. Ms. Shanta Driver, you may proceed for the petitioner. Thank you. My client, Roderico Perez, has been in detention since March and the reason why he's been in detention is because the BIA overturned the I.J.'s decision that granted him cancellation of removal based on the fact that at the time the I.J. made the decision, his daughter was 17 years old and the immigration judge found the reasons to grant him cancellation of removal based on several factors including that his daughter had an exceptional condition which necessitated him staying in the United States. She also found that he was a person of good moral character and so as soon as that decision was implemented, he spent the next five years between 2020 and 2025 living in his community. He never committed a crime during that time. Absolutely, there's absolutely no reason for the BIA to have made the decision that it made or the immigration court to deny Mr. Perez his right to bond. Ms. Driver, I apologize for interrupting but I appreciate the the equities here on behalf of your client but we're pretty familiar with what's happened here and it seems to me we just need to turn as quickly as possible to what does removal mean? Does it mean the order of the immigration judge or does it mean the order of the BIA? One thing that I'm curious about that I'd like you to respond to is I can't find any cases that deal with the situation of somebody's status as a qualifying child changing between the IJ decision and the BIA decision except the 11th Circuit cases. Have you found any other decisions that have that fact pattern? There are multiple cases, Judge, in which a child has timed out by the time a case gets past the immigration court level and reaches the BIA but I think this case is unique. Before you go on, tell me what those cases are where the timing facts are the same as our case except for the 11th Circuit cases. I think they're, among other things, I think that they're cited in the order of this court that was issued on March 26th to answer the question of whether or not Mr. Perez deserved to get a stay of removal. Tell me what your best case is that has the same fact pattern. Let's try it that way. No case has this fact pattern. I will agree with you on that. The reason for that is because this is an extraordinary case. This is a case in every... Time out. At first you said there were a lot of cases and now you said that there are no cases where somebody has aged out between the IJ decision and the BIA decision. Did I hear that correctly? There are two factors that I believe make this case different. One of the Sixth Circuit's own cases. I'm not trying to prevent you from arguing, but if you won't answer my question, we're just sort of wasting your argument time. Very simple. I'm not asking you to argue. I'm not asking for you to distinguish cases. I'm just asking you, other than the 11th Circuit case, are there any cases where somebody aged out between the IJ decision and the BIA decision? No. Okay, so if there are no other cases other than the 11th Circuit decision, would we essentially be creating, and I don't mean to suggest that this is dispositive, it's just a factor, would we be creating a circuit split between the Sixth Circuit and the 11th Circuit? Were we to hold the way in which you want us to hold? Yes. All right, that's what I wanted to know. Thank you. Counsel, why is the right time period to not look at the BIA decision as opposed to the IJ decision? It's one of the factors to look at, but it's not the only factor to look at. The question in this case, as I understand it at least, is we're not applying various factors. We have to decide a precise timing point in this case's journey as to when to ask whether this person, the child, was a child or not, right? Or not. And so there are a couple of different options as I see it. There's the option of when the IJ comes down with the decision, and then there's the option of the BIA when the BIA decides the point. So why should we not set the relevant time point at the BIA decision? Because that would favor the ability of anyone who gets cancellation of removal from being able to move forward on that prospect, which was decided by an immigration court. And if it gets tied up by the BIA, as this case did for five years of nothing happening, then automatically that person would lose unless the child was under 14 years of age. And the statute makes clear that the age determination is based on an unmarried child who is less than 21 years old. So I think that would be... I agree with you, counsel. I agree with you that that part is clear, but it's not clear to me at least from the statute when we ask that question, right? Is this person 21 at this point or at this point? There are two choices that various courts have adopted. One is, is that question when the record is closed? And the other is, is that question the answer at the time of the immigration court's decision? And I think in this case, it's only fair that it be at the point of the immigration court's decision because there is nothing that Mr. Perez, no relief he had available to him once the case got to the BIA that could have preserved the decision that he received from the immigration court. When would you say that the overall decision, when was this order of deportation, when was that final? There was no final order of deportation until the BIA acted. And the BIA acted not on the merits of the case, but on the fact that when they looked at the case five years after it had been submitted, which was not a delay caused by Mr. Perez, that, oh, well, his daughter's timed out now. So let's just say we can reinstate a removal order that was already struck down by the immigration court five years earlier. Ms. Driver, it seems to me we're potentially conflating two things in your argument. One is, what is the date we look at? Is it the IJ or is it the BIA? That's what Judge Ritz asked you a minute ago. And you've agreed that the order is not final until the BIA acts, correct? Yes. So assuming, just for purposes of our discussion, that we use the BIA date, then that leads us to the question of whether there were some unusual circumstances in this case that would mean that we shouldn't look to that date. In this case, because you're arguing that they took too long. So if we were to get to that, I'm just curious, how would you have us frame how we look at whether they took too long? In other words, what's okay and what's too long? Where do you draw that line? I think you draw it on a case-by-case basis, and you look at the other factors. Was the delay caused by the respondent or was the delay caused by an action of the BIA? You've been interrupted several times in your argument, and I'm sorry to do it again. But I want to ask you a question that really goes to the overall approach in this case. It seems to me that whatever the rule is, it won't be a rule that's based on your client's individual circumstances or his individual situation. It seems that we generally have to articulate a rule that we hope would be generally applied in these cases. So it seems to me that focusing on the particulars of your client's case, while obviously it's your job to advocate for him as an individual, it seems to me it kind of gets in the way of an argument about what the rule should be as a general matter. What do you think about that? I think the rule should be what the circuits have decided already and was the basis of our state motion, that the time of the child, that these cases must be based on the age of the child. I don't see this case, I think probably in the same way, so I might need more clarification. But this is a very particular part of the statute, and as Judge Sutton said, he says that there is a public interest in prompt execution of removal from being wrongfully removed, and he cites McCann, the U.S. Supreme Court. This case, this is not a case in which the alien is particularly dangerous or substantially prolonged his stay by abusing the process provided to him. Indeed, quite the contrary, this case cannot result in a prompt removal simply because the board took five years to adjudicate the government's appeal. I think that's the right standard. I think the standard that exists now looks at several factors, including whether... Counsel, I'm sorry, your time has expired, but you're going to have your rebuttal time. Thank you. May it please the court, my name is Christina Ziden and I represent the Attorney General. We ask this court to deny this petition for review and to uphold the board's decision that Mr. Perez no longer had a qualifying child by the time the board made the decision and that the board properly held that he no longer had a qualifying child by that point. The plain text of the statute, section 1229B.B.1.D. directs a forward-looking inquiry in stating that the applicant must establish that removal would result in the requisite hardship to a qualifying relative. Counsel, I guess forward-looking as of what moment? Because it does seem like in this case, for example, that at the time the immigration judge decided the matter, Mr. Perez Perez had established that. Forward-looking as to the point of removal, which can only occur after the final adjudication in the case and the final adjudication in the case when a case is appealed is the board's decision under the INA. Ms. Ziden, at that point I'm just curious. I don't think that's really been much emphasis made, but section 1101.A.47 talks about an order of deportation and when the order of deportation becomes final. So am I in the right section? Are we talking here about when an order of deportation was final? Yes, and so you're correct. The 1101.A.47 uses the term deportation. That's essentially interchangeable in this context with the word removal. Deportation is just sort of the older language. All right, so if that does apply, section B of that section says that an order of what I think is referring back to an IJ, an order of an IJ becomes final upon the earlier of the period of time to appeal to the BIA having run and no appeal having been filed or the decision by the BIA. So it seems to me, I'm just wondering if this language is all interchangeable, that seems to say then in a case like this that if there is an appeal, it's final when the BIA acts. Am I reading that right? That's the position that we take, yes. So I mean from your perspective, is this case really controlled? To answer the question of do we look at the IJ time or the BIA time, is it really controlled by 1101.A.47 or not? We believe that it is controlled by that section, yes. You know, there were a number of years when the age of the child was still young enough to have put her in the position of having been qualifying. The delays, I mean we can't depart from what the statutory interpretation is, but it just seems to me that your interpretation gives the BIA an incentive to take more time even than usual and just wait out the age of the children in question and that's not a good result, is it? Your Honor, we acknowledge that five years is a long time and we, but we, what something that 11th Circuit pointed out in D.S. Arellano is that administrative delays won't always necessarily, won't always necessarily disfavor the applicant. It can cut, it's a standard that can cut both ways. Children will be born, couples will marry, and the new hardships to those individuals will have to be taken into account by the adjudicator. Also in this case, I do want to point to two factors that make the, that make those five years reasonable in context and so those two factors are first of all, I mean I do want to caveat, we don't fully know why this case took five years, but pointing at two facts that are in the record, the first is the date of the DHS's appeal and that is May 19th, 2020, which was the height of the pandemic and we strongly suspect that that factor had an influence on how fast, the fact that there was a pandemic and that the world was shut down for a while. We do believe that that factor had an effect on how long this case took to decide. Another factor is that before, and just kind of going off of that, one of the things that has to happen before the board issues a briefing schedule and before the board decides a case is that it has to receive the entire record of proceedings from before the immigration judge and so I, and part of that record of proceedings is the hearing transcript before the immigration judge. On page 421 of the record, we can see that that hearing transcript was completed on August 20th, 2021 and that was over a year after the appeal was received and so that, and so that was, and that's, that's only a few months before the board issued the briefing schedule in this case. Once briefing was complete, Mr. Perez's daughter was, was only 15 months away from her, from her 21st birthday. Something that the, something that the board of immigration appeals practice manual allows in chapter 6.4 is the filing of a motion to expedite. A motion to expedite, a motion to expedite one of the, one of the, hold on counsel, counsel. I don't, I'm trying to put myself in the position of Mr. Perez-Perez. I mean there's BIA case law, correct me if I'm wrong, but it's a Isidro Zamorano that says the key point is the IJ's decision. So why would, why would there be an incentive to expedite? They can look at that case and say I'm good here. I don't have to worry about how long this is going to take. We disagree that that's actually what Matar of Isidro indicates firmly. Matar of Isidro held that someone who does not have, someone who does not have a qualifying child by the time the immigration judge makes a decision doesn't have a qualifying child, but we don't believe that it actually says this is the end Cabrera, and that is a case that held that cancellation is a continuing application that continues until the final adjudication of a case before the Board of Immigration Appeals if an appeal is taken. And so we, we believe that Matar of Isidro, and under the facts of that case, age out happened before the immigration judge, but we don't believe that it actually assigned the immigration judge's decision as the final end point. Well, as a practical matter, is it not the case for all of these cases that deal with facts where somebody aged out before the IJ, and you were trying to figure out, those courts were trying to figure out whether, whether that was the appropriate time, they wouldn't be referring the BIA because the child had already aged out before the IJ. So the cases are going to reference the IJ because that was the date by, before which the person aged out. It doesn't answer the reciprocal question of what happens afterwards. That's the position that we take is that those, those cases refer to the IJ's decision because that factually, that was relevant in those cases. Yes. And so I guess going back to the point of, of the motion to expedite being available, one of the situations where a motion that, where the BIA's practice manual says that a motion to expedite is appropriate is a case of imminent ineligibility for relief for removal. And the a derivative would age out of derivative status for an application, which is not exactly what happened here, but it's, it's similar. It's a similar context. And so that, that is something that was never filed in the three years that the case was pending with the board before Mr. Perez's daughter turned 21. I guess I'm just trying, I'm struggling with that point, counsel, why the petitioner would want to expedite the government's appeal of a IJ decision in the petitioner's favor. I mean, the IJ's decision is, I mean, he wins and it's, you guys are appealing, which I think makes us a little different than some of these other cases. And, you know, but until you succeed on that appeal, he's in a, in a, in a preferred stance. Well, so under the INA, even though it was the DHS's appeal, the, the applicant retains the, retains the burden to demonstrate eligibility for relief, retains the burden to demonstrate that they meet the requirements for relief. Which he did. And then you're appealing it, trying to get the BIA to say there was some sort of error. Right. But the, I, but he's still, he's still had the obligation to show eligibility for relief throughout his proceedings because cancellation is a continuing application. Your position inevitably puts the BIA in the position of having an incentive to wait until the child does age out. I mean, is that quite apart from the statute? What, that can't possibly be a good result from a policy standpoint that the age, the repeat, that the, the reviewing agency has an incentive to do nothing. Well, we disagree that it necessarily has an incentive to, to wait because as I said, some, for some applicants an administrative delay will favor them. New hardships can accrue, new, new relatives can come along, qualify. And also there is a presumption of regularity that the board will, that the board and federal officials will not act in a way that is, that is unlawful in these cases. And we certainly don't believe that the board sat on its hands here, just based on what I was describing before, that the, the, the time, the length of the, the length of the pending appeal can be explained in this case just by the, by the delays caused by the pandemic. What do you think the reception would be if we argued that our cases had been delayed for a similar period of time because of the pandemic? I mean, we, we courts, appellate courts across the country adapted, worked remotely, got their dock, handled their dockets, did pretty much business as usual. So I don't know if there was any difficulty for the BIA that wasn't attendant to many, many other proceedings that went along normally during that period. That's, that's why we bring up the motion to expedite because that is something that Mr. Perez could have done in order to speed things along. If I could ask a sort of a follow-up question to that, you, you have a much broader perspective than the three of us do because you do this all the time. So if somebody came forward with some indication that other similar cases that were kind of of COVID cases got resolved much faster than this one did, it certainly would make a more persuasive argument that theoretically or potentially the BIA stalled this until the child aged out. But do you have any sense from doing this every day, how the timing for the BIA in this case compared to similar cases? So what, right now I do not have, I do not have that. I, I, we, we're starting to see, I believe we're starting to see similar cases where there was an immigration judge decision in 2020. And there are different factors also that influence when a case is decided. Not necessarily just the timing of the appeal. And so it's, other cases might not, being decided more quickly might not necessarily be probative if they're not, if the, if the applicants or if the, if the aliables have had differences from other, other individuals who received a decision in 2020 from the IJ. Counsel, I have another, I guess, sense of the practice type question. And I'm curious when an immigration judge cancels, issues an order canceling removal, as in this case, does the government appeal that as a matter of course? Or is there kind of a picking and choosing on from the government side of, well, sometimes we'll let those orders go and then sometimes we'll appeal. Not my impression that those are appealed as a matter of course. Thank you. All right, I see that my time is up. So if anybody has any more questions, I'll just ask the court to once more to deny the petition for review. Thank you. Thank you, counsel. We'll hear rebuttal. Thank you. First, I want to refer the court to an argument that the 10th Circuit contemplates in the Rangel case. Because in that case, the court says that the word establish, which is in the statute to define eligibility for this kind of relief, equates with the word prove. And so when, according to this, the time that Mr. Perez proved that his daughter met the standards necessary for this relief was that time when he was before the immigration court. And it also points out that the word establish, rather than has established, just the plain word establish is only used in section 1229BB1D of the statute. That it's a different that Congress considered this question when it included this part in the Immigration Act and decided that it should be treated differently. Exactly because of the possibility of someone being timed out. Ms. Stryver? So if we're going to look at Rangel Fuentes, I mean, I think it's an interesting case to look at. But wasn't the issue in that case whether the time we should be looking at was when the record closed or when the IJ acted? Because as I understand the facts in that case, the person actually aged out before the IJ decision. That's true. But I think the standard that is established in this case of looking at the point in time when somebody proves that they're eligible is the right standard to use in this case. I'm just trying to figure out how we get from the facts of that case to the facts of this case where the aging out occurred after the IJ decision. I don't think that's the key. The question that this case is addressing is whether the IJ's decision was proper given that the child had timed out before the decision was issued. Everybody agrees. If that happens, no. You have no case. What's specific in this case that is not in other cases is the fact that there is a difference in the statute rendered by Congress to be able to distinguish this form of relief from other forms of relief considered in this section. And so my only other point is that I think we have to honor Congress's intent in terms of what is in this law. The government argues this is a political question, but it's not a political question. Every case has some aspect of political interpretation to it, but not this statute. I think we understand your argument and your time has expired. Thank you. Thank you counsel. Thank you both for your helpful arguments in this interesting case. The case will be submitted.